**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **INSIGNIA DISPOSAL SERVICES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MICHAEL A. HREBENAR, et al.,**<br><br>Defendants. | **CIVIL ACTION**<br><br>**NO. 23-1722** |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                      **October 4, 2023**

Plaintiff Insignia Disposal Services, LLC ("Insignia") brings two claims against Defendants Michael A. Hrebenar, James M. Hrebenar, Brad A. Hrebenar, Edward A. Hrebenar and David Marino in connection with Defendants' sale of a waste management company to Insignia. Insignia alleges that Defendants (I) must indemnify Insignia for various post-sale losses incurred as a result of inaccuracies and misrepresentations within the governing Stock Purchase Agreement ("SPA"); and (II) those false and misleading statements induced Insignia to purchase the company, and therefore amount to a violation of the Securities Exchange Act of 1934.

This case is related to <u>Key Star Partners, LLC v. Insignia Disposal Servs., LLC</u>, No. CV 22-2338 ("Key Star Action"), where this Court dismissed Insignia's near-identical third-party complaint against the same five individuals who are Defendants in this case because Insignia had "improperly impleaded" these individuals. 2023 WL 2920283, at *10 (E.D. Pa. Apr. 12, 2023). In dismissing that third-party complaint without prejudice and with leave to amend, this Court expressly provided Insignia with an opportunity to "derive another method to join" Defendants in the Key Star Action, <u>id.</u> at *11, but Insignia did not do so, and instead initiated the present action.

1

Defendants now move to dismiss both counts as barred under Fed. R. Civ. P. 13(a)'s compulsory counterclaim rule, or in the alternative, as failing to state a claim upon which relief can be granted. For the reasons explained below, the Court will **GRANT** Defendants' Motion on Rule 13 grounds, without prejudice, because Insignia failed to assert the present claims as compulsory counterclaims in the Key Star Action, and with leave to file an Amended Counterclaim in the Key Star Action.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In March 2021, Insignia, Defendants, and Key Star Partners, LLC—a company for which Defendants are the sole members and owners—entered an SPA governing Defendants' sale of Tire & Rubber Company ("TRI") to Insignia. ECF No. 1 at ¶ 10. Insignia agreed to purchase Key Star's shares in TRI for $4.1 million, subject to certain adjustments, including up to $600,000 in Earn-Out Payments ("EOPs") based on the amount of waste that TRI disposed of during the pendency of the deal. Id. at ¶ 13.

Under the SPA, Key Star made numerous representations and warranties to Insignia regarding the financial and operational health of TRI. Id. at ¶ 15. As relevant here, Key Star represented that

- TRI's Financial Information (as provided by Key Star) was true and accurately and fairly presented TRI's financial condition;

- There had not been any events or developments that could reasonably be expected to have a Material Adverse Effect on TRI's business;

- TRI's assets were sufficient and adequate for the continued conducting of TRI's business after closing;

- TRI had complied and was complying with all laws and environmental laws applicable to its business; and

- No representation or warranty contained any untrue statement of a material fact, or omitted to state a material fact necessary to make the statements in the SPA not misleading.

Id.  Key Star refreshed the validity of these representations before the deal closed, after which certain representations survived for eighteen months, whereas others survived indefinitely or through an applicable statute of limitations.  Id. at ¶ 19.  Likewise, through closing, Key Star agreed to continue to "conduct the business of [TRI] in the ordinary course of business consistent with past practice."  Id. at ¶ 18.

In addition to these representations and warranties, Key Star and Defendants agreed to jointly and severally indemnify Insignia for certain post-sale losses, were they to occur.  Id. at ¶ 20.  That indemnification extended to losses flowing from (1) "[a]ny inaccuracy in or breach of any of the representations or warranties of [Key Star]," and (2) "any breach or non-fulfillment of any covenant, agreement or obligation to be performed by [Key Star] or any Restricted Person." Id.

The transaction closed in September 2021, and roughly a year later, Key Star filed the original Key Star Action in this Court—seeking to collect an unpaid EOP allegedly due under the SPA.  Id. at ¶¶ 23-24; ECF No. 7-1 at 2.  Critical to this dispute, Insignia then (1) brought several counterclaims against Key Star and (2) filed a third-party complaint, pursuant to Fed. R. Civ. P. 14, against each of the individual owners/shareholders of Key Star, who are now Defendants in this action.  ECF No. 7-1 at 2-3.

Insignia's counterclaims and third-party complaint in the Key Star Action, along with its Complaint in this action, all flow from the same underlying set of allegations.  Specifically, these claims originate from Key Star's alleged misconduct before and during negotiations and after signing the SPA related to Key Star's representations regarding the financial, physical and regulatory condition of the TRI facility and their conduct in operating the facility post-signing.  As

this Court summarized in the Key Star Action, Insignia's allegations of breach and misrepresentation are as follows:

- **Failure to Maintain Sufficient Airspace:** Insignia alleges that sometime after signing, TRI began to significantly increase its tire waste intake and airspace usage without correspondingly increasing its cell space availability, inconsistent with past practice. Insignia alleges that a part of the ordinary operation of such a landfill requires maintaining sufficient airspace for anticipated waste intake, and that TRI's failure to do so reflected its goal to meet the earn-out targets without expending capital to maintain the landfill post-closing. Insignia alleges that it discovered the damage from TRI's actions during inspection shortly after closing. Furthermore, Insignia alleges that at some point prior to closing, dirt from an adjacent hillside slid into one of the landfill cells causing additional damage to viable airspace, and which TRI did not elect to fix before control was ceded to Insignia.

- **Environmental Regulatory Violations:** Insignia also alleges that following closing, it found evidence at the TRI facility of improper waste disposal inconsistent with government business and environmental permits held by TRI. Insignia alleges that it found a "brown spot" in a disposal storage cell indicating additional underground heat from a failure by the customer to separate the waste material. Insignia alleges that after representing to the contrary during negotiations and signing of the SPA, TRI knowingly accepted non-permitted waste material to help meet the earn-out targets, exposing TRI to regulatory liability and damaging the facility.

- **Failure to Maintain Leachate Pond:** Insignia alleges that after closing, Insignia was alerted by West Virginia's Department of Environmental Protection that the TRI facility's leachate pond, a landfill receptacle used to collect runoff from rainwater that comes in contact with buried waste, required a corrective action plan for cleaning and maintenance. Insignia discovered after closing that the TRI leachate pond had not been cleaned out in eight to ten years. Insignia alleges that Key Star did not disclose the condition of the leachate pond, the cleaning and dredging of which has costed Insignia approximately $60,000 as of the filing of this Complaint.

- **Illegal Over-Charging of Customers:** Insignia alleges that in the period between the signing of the SPA and closing, TRI faced a formal complaint filed by its customers with West Virginia's Public Service Commission, which claimed that TRI had illegally raised the price of its tire disposal services. According to Insignia's pleadings in this action, an Administrative Law Judge has concluded, in part, that TRI, during Key Star's operation of TRI, improperly raised its tariff and precluded TRI from increasing its commercial rate without PSC approval. Insignia alleges that TRI's impermissible price-raising of its services during the period between signing and closing is inconsistent with Key Star's representations in the SPA that TRI was in compliance with all laws and regulations.

- **Failure to Disclose Existing Federal Regulatory Violation:** Finally, Insignia alleges that prior to closing, TRI employed an individual who had engaged in conduct in violation of federal regulations restricting drug and alcohol use. Insignia discovered this when the Department of Transportation notified TRI after closing that TRI was in violation of 49 C.F.R. § 382.501(a), which prohibits employers from allowing a driver who violated the regulation's drug and alcohol rules to drive a commercial motor vehicle. Therefore, Insignia alleges, Key Star falsely represented that it was in compliance with all laws and regulations at the time of the signing.

Key Star Partners, LLC, 2023 WL 2920283 at *3; ECF No. 1.   Based on those allegations, this Court denied Key Star's motion to dismiss Insignia's claims for (1) breach of contract, (2) indemnification under the SPA, (3) securities fraud under Rule 10b-5 of the Securities Exchange Act of 1934, and (4) common law fraud.  Id. at *1, 11.

In contrast, this Court dismissed Insignia's third-party complaint, without prejudice and with leave to amend.  Id.  That complaint, like the Complaint here, sought (1) indemnification under the SPA from each individual Key Star shareholder (i.e., Defendants here) and (2) damages for "control person liability" under § 20 of the Securities Exchange Act of 1934.  ECF No. 7-3 at 18-23.  In dismissing that third-party complaint, this Court explained that "Shareholders were improperly impleaded," as although "Shareholders as indemnitors are liable to indemnify Insignia by subtracting from the owed Earn-out payments," that did not mean "Shareholders 'may be liable' for Insignia's failure to pay the second Earn-Out Payment," Key Star Partners, LLC, 2023 WL 2920283 at *10, as is required for proper third-party impleading under Fed. R. Civ. P. 14(a)(1).

Following that dismissal, Insignia declined to amend its third-party complaint against the Key Star Shareholders, despite this Court's express invitation to "derive another method to join them into this litigation" and its observation that "[a]s indemnitors, the Shareholders are likely central to any of Insignia's surviving claims."  Id.

Instead, Insignia commenced the present action, asserting nearly identical claims to those in the third-party complaint.  Compare ECF No. 1, with ECF No. 7-3.  Defendants have moved to dismiss Insignia's Complaint, asserting that (1) under Fed. R. Civ. P. 13(a), both claims are barred as compulsory counterclaims in the Key Star Action; and (2) even if they are not barred, Insignia has failed to plausibly state a claim for relief on both Counts.  ECF No. 7 at 1.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements,"  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555), and so a complaint will not "suffice if it [is] devoid of further factual enhancement,"  Iqbal, 556 U.S. at 662 (citation omitted).  Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff,  Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that [she] has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

Under Fed. R. Civ. P. 13, a defendant's pleadings must "state as a counterclaim any claim that—at the time of its service—[defendant] has against an opposing party" if that claim "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "(B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a).  If a defendant fails to bring any such compulsory counterclaim, he is barred

from doing so in subsequent actions.  Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 390-93 (3d Cir. 2002).

### III.   SUMMARY OF CONTENTIONS

#### A.  Compulsory Counterclaims

Defendants contend that, for both Counts, "the two requirements of Rule 13(a) are satisfied," and so Insignia's Complaint here is barred by the compulsory counterclaim rule.  ECF No. 7-1 at 7.  First, Defendants assert that Insignia's claims "arise out of the same transaction or occurrence as the subject matter of Key Star's original complaint" because "[a]ll of the claims arise out of the stock purchase agreement and the sale of TRI from Key Star to Insignia."  Id. at 8. Second, Defendants assert they are "opposing parties" for the purposes of the Key Star Action because they are "the owners of Key Star," in "privity" with Key Star, and thus "fully in control of the Key Star Initiated Action."  Id. at 9.[1]

Insignia counters that Key Star and Defendants are not "functionally equivalent," ECF No. 8 at 10, and therefore that Defendants and Insignia are not "opposing parties" in the Key Star Action.  Specifically, Insignia contends the "opposing party" label requires either (1) a "derivative" relationship between the named and unnamed parties or (2) a counterclaim in a "separate action against the very same defendant at a later date," id. (citing to Avemco Insurance Co. v. Cessna Aircraft Co., 11 F.3d 998, 1001 (10th Cir. 1993)), neither of which exist here.  Insignia asserts the relationship between Defendants and Key Star is instead "that of member-company, where the

---

[1] Defendants also contend that Insignia has already expressly and unequivocally conceded Defendants' "opposing party" status in the original action, where Insignia argued that "[b]ecause Key Star filed the Complaint against Insignia for Earn-Out Payments under the SPA, Insignia had no choice but to file its compulsory claims against the Sellers [again, defined to mean both Key Star and the Key Star Members] when it did, lest it be later precluded from bringing such claims." Id. at 10; see also ECF No. 7-5 at 13, 24-25.

member's rights and defenses are direct and separate from the company's rights and defenses." Id. at 11.

Insignia further contends that Defendants should be judicially estopped from seeking a dismissal based on the compulsory counterclaim rule because it amounts to a position that is "inconsistent with one he or she previously took before a court or agency." Id. at 14 (citing to Montrose Medical Group Participating Savins Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001)). In support of this contention, Insignia highlights that Defendants—in opposing the third-party complaint in the Key Star Action—asserted that the "claims against the Shareholders and the claims against Key Star, 'while rooted in the same alleged misrepresentations, arise under different theories of liability.'" Id. at 15 (citing to Key Star Action, ECF No. 26 at 12-13).

Defendants reply that this snippet mischaracterizes its earlier position. ECF No. 9 at 3. When read in context, Defendants contend, the full quote[2] makes clear that "Key Star Members were merely responding to Insignia's assertion that the Court need not dismiss the third-party complaint because the parties could simply be joined to the existing Amended Counterclaim,"

---

[2] In full, Defendants stated

> [T]here is no means by which the TPDs can simply be joined to the Amended Counterclaim. Rule 13(h) permits the joinder of parties to a counterclaim if and to the extent authorized by Rules 19 and 20. But, it is well settled that Rule 13(h) 'does not allow a party to make one counterclaim against the existing party and then, using that as a platform, join a different party and assert a different counterclaim against that party.' Counterclaim and Crossclaim, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 13; see also F.D.I.C. v. Bathgate, 27 F.3d 850, 874 (3d Cir. 1994). That is precisely what Insignia is attempting to do. The claims against Key Star, while rooted in the same alleged misrepresentations, arise under different theories of liability. For example, Insignia asserts claims for breach of contract against Key Star but not the TPDs. Similarly, the securities fraud claims are different (one a direct claim and another based on control liability). Thus, simply joining the TPDs to the Amended Counterclaim is not sufficient.

Key Star Action, ECF No. 26 at 12-13.

where in actuality Insignia "needed to procure leave of Court pursuant to Rule 15(a)(2) to file a Second Amended Counterclaim and to then invoke the joinder rules to add the Key Star Members as additional counterclaim defendants." Id. at 4.

**B. Failure to State a Claim**

As for the merits, both parties simply direct us to briefing in the Key Star Action, which the Court summarizes here briefly.  On Insignia's indemnity claim, Defendants assert—by reference to Key Star's briefing—that Insignia failed to comply with notice-related conditions precedent under the SPA that would have triggered Key Star's duty to indemnify, thus precluding liability.  ECF No. 7-4 at 13.  Defendants further argue that Insignia has yet to pay for various alleged losses, and that indemnity obligations do not arise until payment occurs.  Id. at 14-15.  Defendants also contend that Insignia's allegations with respect to (1) the leachate pond issues, (2) the permit issues, (3) the alleged overcharging of customers and (4) the DOT violations, even if accepted as true, do not trigger a misrepresentation under the SPA, and thus do not require indemnification.  Id. at 15-18.

On Insignia's § 20(a) claim, Defendants contend that even if Key Star committed a securities violation, nothing in the present Complaint indicates that Defendants were "culpable participants" in the conduct, ECF No. 7-1 at 12, meaning they had "knowledge of the underlying fraud" and that their inaction to remedy that fraud was "'deliberate and done intentionally to further the [underlying] fraud,'" id. at 14 (citing to Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P., 176 F. Supp. 3d 387, 400 (D. Del. 2016)).  As Defendants put it, "Insignia's Section 20(a) claim rests entirely on the representations and warranties made in the Stock Purchase Agreement.  But, these representations and warranties are not even being made by the Key Star

Members. . . . . There simply is no allegation that the Key Star Members were involved in any purported securities fraud committed by Key Star." <u>Id.</u> at 15.

## IV.   DISCUSSION

The Court's analysis here begins and ends with the compulsory counterclaim issue.  As noted, under Rule 13(a)(1), a pleading

> must state as a counterclaim any claim that . . . the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1).  When "a defendant fails to bring a compulsory counterclaim, he is barred from asserting that claim in a future proceeding." <u>Miller v. 3G Collect, LLC</u>, 302 F.R.D. 333, 335 (E.D. Pa. 2014).

Here, neither party seriously disputes that Insignia's Complaint "bears a logical relationship to" the original complaint in the Key Star Action, <u>Xerox Corp. v. SCM Corp.</u>, 576 F.2d 1057, 1059 (3d Cir.1978), and therefore arises out of the same transaction or occurrence. ECF No. 7-1 at 8; ECF No. 8 at 9.  As Defendants correctly note, "all of the claims arise out of the stock purchase agreement and the sale of TRI from Key Star to Insignia." ECF No. 7-1 at 8.  That nexus easily satisfies this first requirement, particularly in view of the Third Circuit's directive to construe it "liberally to promote judicial economy." <u>Transamerica</u>, 292 F.3d at 389.

The key inquiry thus becomes whether Defendants qualify as "opposing parties" in the original Key Star Action, despite not originally appearing as named plaintiffs.  The Third Circuit's decision in <u>Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.</u>, 292 F.3d 384 (3d Cir. 2002), authored by then-Judge Alito, is instructive on this front.  There, the Court explained that "opposing parties," like "transactions or occurrences," should be interpreted "broadly" to "give effect to the policy rationale of judicial economy underlying Rule 13." 292 F.3d at 391.  In

10

so doing, the Court relied on the Second Circuit's decision in <u>Banco Nacional de Cuba v. First National City Bank of New York</u>,  478 F.2d 191 (2d Cir.1973), and the Tenth Circuit's decision in <u>Avemco Insurance Co. v. Cessna Aircraft Co.</u>, 11 F.3d 998 (10th Cir.1993) to distill the following test: "where parties are functionally equivalent [], where an unnamed party controlled the litigation, or where [] an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of Rule 13." <u>Id.</u> at 391.   Notably, the Court further explained this disjunctive test would be satisfied where a party is "in privity with the formally named opposing parties." <u>Id.</u> at 393.

Applying that distillation, the <u>Transamerica</u> Court ultimately concluded the defendant in that case—which had assumed the rights and obligations of other corporations and conducted earlier litigation on behalf of and in the name of the corporations—was an opposing party in the earlier actions for purposes of the compulsory counterclaim rule.  <u>Id.</u> at 386, 394.

Here, Insignia attempts to distinguish <u>Transamerica</u> on its facts.  It notes, for instance, that the "functionally equivalent relationship" in <u>Transamerica</u> "involved an assignment of rights and obligations," whereas "the relationship between the Shareholders and Key Star is that of member-company, where the member's rights and defenses are direct and separate from the company's rights and defenses."  ECF No. 8 at 11.  That distinction, Insignia contends, also renders <u>Avemco</u>'s insurer-subrogee relationship inapposite, <u>id.</u>, as the Tenth Circuit in that case distinguished between "indemnification [] aris[ing] from an independent contract with the third person" and an "insurer's right to indemnity [] by subrogation."  11 F.3d at 1001.

These attempts are unavailing, as Insignia ignores <u>Transamerica</u>'s clear directive to interpret Rule 13 "broadly" and "liberally."  292 F.3d at 391.  Indeed, this Court's task is not to assess whether Defendants in this case perfectly mirror those in <u>Transamerica</u>.  It is instead to

discern whether, in this particular context, a sufficiently "close relationship" exists between Defendants and Key Star such that they are "functionally equivalent." Id. at 390-91.

And that is plainly the case here.  As Defendants persuasively note, they were "the owners of Key Star," and thus "fully in control of the Key Star Initiated Action."  ECF No. 7-1 at 9. Insignia admits as much, as a key tenet of Insignia's "control person liability" theory of harm is that "[a]t all relevant times, each of the Defendants was an owner of Key Star (and together held 100% ownership interest in Key Star) and director of TRI (and together comprised 83% of the six-person Board of Directors), which gave the Defendants the power to control the management and affairs of both Key Star and TRI."  ECF No. 1 at ¶ 100.[3]  That type of control also squarely embodies the "privity" that "courts frequently find . . . between a corporate entity and its controlling owner[s]," Reach Commc'ns Specialists, Inc. v. Williams, No. CV 13-2388, 2023 WL 1967940, at *6 (E.D. Pa. Feb. 13, 2023), appeal dismissed sub nom. Reach Commc'ns Specialists, Inc., v. Sheriff of Philadelphia Cnty., No. 23-1496, 2023 WL 5997343 (3d Cir. Apr. 12, 2023); see also Sec. & Exch. Comm'n v. Cammarata, No. 21-CV-4845, 2023 WL 5644689, at *12 n.25 (E.D. Pa. Aug. 31, 2023); Goel v. Heller, 667 F. Supp. 144, 151 (D.N.J. 1987); CSX Transp., Inc. v. 2712 Invs. L.P., No. CIV. A. 14-7148, 2015 WL 2077580, at *3 (E.D. Pa. May 1, 2015), and thus persuades the Court the requisite "functional equivalency" exists to satisfy Rule 13(a) in this case.

Reinforcing that conclusion are Insignia's overlapping and redundant allegations across the two actions.  Simply put, Insignia's Complaint here is virtually identical to the two parallel counts in its Key Star Action counterclaim.  Count I of this Complaint seeks indemnification from

---

[3] While Insignia contends that such control does not necessarily demonstrate Defendants "controlled the defense in both actions," Transamerica, 292 F.3d at 390 (emphasis added), that claim is without merit, as it is Defendants themselves who actively admit they have exercised and continue to exercise such control.  ECF No. 7-1 at 9.

Defendants.  ECF No. 1 at 16-17.  Insignia's original counterclaim seeks that exact same indemnification, predicated on the exact same allegations, from Key Star itself.  Key Star Action, ECF No. 8 at 17-18.  And while Insignia now posits these are distinct claims against distinct entities, ECF No. 8 at 12, it is telling that Insignia's briefing in the Key Star Action equates Key Star and Defendants, characterizing them not as company and owner, but instead as a singular set of jointly liable "Sellers."  ECF No. 7-5 at 13.  Indeed, in the earlier action, Insignia expressly argued—without distinguishing between Key Star and Defendants—that Insignia's indemnification claims against "Sellers" were "compulsory counterclaims that must be asserted in [the Key Star Action]."  Id.  That self-purported equivalency again leads the Court to conclude not only that the Key Star Action and the present dispute "involve the same factual and legal issues" and "the same controversy between the parties," Transamerica, 292 F.3d at 393, but that Insignia was also obviously "aware of the identity of interests" when it filed this second suit.  Id.

True, mere allegations of joint liability, without more, are insufficient to "require[] automatic compulsory joinder" under Fed. R. Civ. P. 19.  Ralston v. Zats, No. CIV. A. 94-3723, 1997 WL 560602, at *10 n.10 (E.D. Pa. Aug. 26, 1997); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 410 (3d Cir. 1993); Temple v. Synthes Corp., 498 U.S. 5, 7 (1990); see also Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1054 (3d Cir. 1988) ("A defendant's right to contribution . . . from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19.").  But that does not undermine Defendants' privity with or control over Key Star, which are independently sufficient to satisfy Transamerica's disjunctive "opposing party" test for the purposes of Fed. R. Civ. P. 13.  Transamerica, 292 F.3d at 391; see also Rohm & Haas Co. v. Brotech Corp., 770 F. Supp. 928, 934 (D. Del. 1991) ("the addition of extra parties [] action does not affect the compulsory

13

counterclaim issue" where "all the additional defendants [] are related to the company") (Roth, J.);
cf Pace v. Timmermann's Ranch & Saddle Shop Inc., 795 F.3d 748, 756 & n.13 (7th Cir. 2015)
(holding that employees of a company were not opposing parties for the purposes of Rule 13(a),
but embracing the notion it may be "appropriate to characterize [] individual defendants as
opposing parties if [] they had been in privity with [Company]").  And Insignia's allegations here
make clear they seek to hold Defendants responsible because they owned and controlled Key Star.
ECF No. 1 at ¶¶ 92, 100.

Indeed, Count II of Insignia's Complaint in this action depends almost entirely on such
control.  That Count—which alleges violations § 20 of the Securities Exchange Act of 1934—
heavily mirrors its original Rule 10-b5 violation against Key Star.  See ECF No. 1 at ¶¶ 93-104;
Key Star Action, ECF No. 8 at 19-20.  Notably, however, its "control person" theory of liability
here requires proof of additional elements beyond those in the original Rule 10-b5 claim.  And it
is these extra elements—that Defendants are (1) "controlling persons," and (2) "in some
meaningful sense culpable participants in the fraud" committed by Key Star, Rochez Brothers v.
Rhoades, 527 F.2d 880, 885 (3d Cir.1975) (citation omitted)—that further blur the line between
Key Star and the individual Defendants.  Put differently, in alleging that Defendants "induced the
act or acts constituting the violation," S.E.C. v. J.W. Barclay & Co., 442 F.3d 834, 841 n.8 (3d
Cir. 2006), Insignia actually bolsters the notion that Defendants and Key Star were "one and the
same for the purposes of the litigation," Transamerica, 292 F.2d at 391 (citation omitted).  That is
particularly true in this context, where all allegations flow from a singular SPA with one set of
obligations, which was "extensively negotiated," ECF No. 1 at ¶ 10, and signed by each
Defendant.[4]

---

[4] The Court notes, however, that even when such an equivalency exists, the intersection between
Rule 13(a) and Rule 19 remains somewhat opaque.  Transamerica does not address it, nor do the

As such, "the policy rationale of judicial economy underlying Rule 13," Transamerica, 282 F.3d at 391, clearly weighs in favor of treating Defendants as "opposing parties" in the Key Star Action.  To hold otherwise would result in "a substantial duplication of effort and time by the parties and the courts," Id. at 390 (citations omitted), as the claims, factual allegations, and individuals involved in each suit are virtually indistinguishable, both in theory and in practice.[5],[6]

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED,** without prejudice, and appropriate Orders in this case and the Key Star Action will follow.

O:\CIVIL 23\23-1722 Insignia Disposal Services LLC v. Hrebenar et al\23-1722 - Memo - 10.4.2023.docx

---

parties brief it.  But our holding that an unnamed party is an "opposing party" under Rule 13(a) necessarily requires it to be an indispensable party under Rule 19, rather than a permissively-joined party under Rule 20.  See Pace, 795 F.3d at 750.  While there is admittedly some tension between Transamerica's multiple "opposing" parties test for Rule 13 and Rule 19's call to discern whether the Court may "accord complete relief among" Key Star and Insignia in the Key Star Action without joining Defendants, Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 313 (3d Cir. 2007), it is nonetheless consistent to say that Defendants are necessary, additional parties under Rule 19 in the Key Star Action because they qualify as "opposing parties" under Transamerica's test.  Put differently, if it is correct that Defendants are in fact already "opposing parties" by virtue of their ownership of and control over Key Star, it is impossible for Insignia to obtain complete relief in the Key Star Action without litigating its claims against Defendants, even if each claim is somewhat distinct.  In other words, Insignia cannot obtain complete relief from opposing parties when some of those parties are missing.  Insignia admitted as much in its Key Star Action briefing, where it stated that "Shareholders are liable for and must indemnify Insignia for Key Star's misrepresentations and breaches of the SPA as described in Insignia's Amended Counterclaim against Key Star . . . . As such, the Shareholders are appropriately joined as defendants under Rule 19 as necessary parties to Insignia's counterclaim against Key Star."  ECF No. 7-5 at 25.

[5] Insignia also readily admits this potential waste, as it notes that "[t]he two actions are pending simultaneously, and Insignia intends to seek to consolidate the two actions."  ECF No. 8 at 12 n.7.

[6] In so holding, the Court stresses that this inquiry turns on the "facts and legal issues" specific to this case, Transamerica, 292 F.2d at 393, as not every instance of company ownership will lead to "opposing party" status under Rule 13.  Moreover, even where counterclaims against owners are indeed compulsory, those owners will not necessarily be liable for every act of a company or for similar and related claims.